UNITED STATES, Appellee

v.

Michael L. WALKER, Sergeant
U.S. Air Force, Appellant.

No. 93–1406.
CMR No. 29848.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 9, 1994.

Decided May 10, 1995.

For Appellant: *Major Ormond R. Fodrea* (argued); *Colonel Jay L. Cohen* and *Captain J. Knight Champion III* (on brief); *Colonel Frances T. Lacey, USAFR,* and *Captain Robert A. Parks.*

For Appellee: *Captain Timothy G. Buxton* (argued); *Colonel Jeffery T. Infelise, Colonel Thomas E. Schlegel, Captain Jane L. Harless* (on brief); *Colonel Richard L. Purdon, Major John H. Kongable, Captain David C. Wesley.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

1. In January of 1992, appellant was tried by a general court-martial composed of officers at Malmstrom Air Force Base, Montana. Contrary to his pleas, appellant was found guilty of wrongful use of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement for 6

1. *See* 41 MJ 213, 229 n. * (1994).

months, and reduction to Airman Basic. On April 6, 1992, the convening authority approved the sentence as adjudged. On June 17, 1993, the Court of Military Review[1] affirmed the findings and sentence in an unpublished opinion.

2. On March 16, 1994, this Court granted appellant's petition for review on the following issue:

WHETHER THE MILITARY JUDGE ERRED BY ADMITTING PROSECUTION EXHIBIT 7, APPELLANT'S MEDICAL RECORDS, INTO EVIDENCE TO BOLSTER THE UNSUPPORTED ASSERTIONS OF PRIOR DRUG USE.

We hold that the military judge abused his discretion under Mil.R.Evid. 403, Manual for Courts–Martial, United States, 1984, when, in a members trial, he admitted evidence of appellant's sinusitis to show appellant's prior chronic use of drugs. *See United States v. Holmes,* 39 MJ 176 (CMA 1994); *United States v. Cousins,* 35 MJ 70 (CMA 1992). *Cf. United States v. Ray,* 26 MJ 468 (CMA 1988), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989). Nevertheless, under the circumstances of this case, we conclude such error was harmless. Art. 59(a), UCMJ, 10 USC § 859(a); Mil.R.Evid. 103(a); *see also United States v. Brooks,* 26 MJ 28 (CMA 1988); *United States v. Betts,* 16 F.3d 748 (7th Cir.1994).

3. Prior to trial, at a session under Article 39(a), UCMJ, 10 USC § 839(a), appellant objected to admission of a copy of his medical records maintained at Malmstrom AFB. He did so on the basis of Mil.R.Evid. 401 and 402 (relevance), as well as Mil.R.Evid. 403 (undue prejudice). These records show that appellant was treated on numerous occasions (six) for sinusitis from January 1989 to October 1991. The prosecutor generally opposed this objection, relying on this Court's decision in *United States v. Ray, supra,* and the military judge agreed, with a provision that a proper foundation be laid for use of such evidence to show prior drug use.

4. During trial, an Article 39(a) session was held for the prosecution to establish its foundation for admission of appellant's medical records. It called Doctor Sweet, who testified as follows:

Q: Have you studied the effects of cocaine on the human body?

A. Yes.

Q: And can you tell us what those effects are on the human body?

A: There are a number of effects that can be talked about on a number of different levels. Cocaine has, as one of its primary activities, the inhibition of uptake of the transmitter, the nerve transmitter, noradrenalin or norepinephrine back into the nerve terminals. When nerves fire to produce their action, whatever those actions are, they, there has to be some way of ending that effect. Cocaine does not—prohibits that mechanism for getting rid of this transmitter. What that does, among other things, is cause blood vessels to constrict and remain constricted, which alleviates the blood pressure. It also increases the heart rate, and these are observable effects of cocaine. It's not well known, but it is presumed that the psychological effects of cocaine, the high, the rush, that forms the basis for the abusive potential of cocaine, is a similar sort of action on the nerves in the brain. Cocaine is also a local anesthetic, acts very much like Novocain does when you might have dental work done. These two effects are probably dissimilar.

Q: So does that mean—

A: In other words, by different mechanisms.

Q: So it has a numbing effect?

A: It has a numbing effect.

Q: What about its effect on the tissues in a human body?

A: Again, there are a number of effects. Most of them are related to this vaso-constriction, the constriction of the blood vessels that I talked about, that raises blood pressure. With prolonged use or with such effects as administration of the drug into a part of the body where it is not washed out by the bloodstream very effectively, there can be long-term, we are talking about several hours, constriction of the blood vessels and starvation of those tissues for blood. And the nutrients, including oxygen carried by the blood. And that can cause tissue damage, destruction, and death, even, in more extreme cases.

Q: Okay. More specifically, if the drug was snorted through the nose, what effect would cocaine have on the sinus passages?

A: Well, the effects are what we've already talked about, anesthesia, as well as the constriction of the blood vessels. The—this is used, actually, by physicians in minor surgery on the interior of the nose. It doesn't bleed as much and it doesn't hurt. With prolonged and frequent administration, if one had, say, snorted cocaine daily or every couple of days, and again, it depends on how much, how often, a large number of variables, so it's hard to say precisely what would happen. There can be tissue death, and it's well-known, it's well-reported in the literature that destruction of the nasal septum, that is, the tissue between the two halves of the nose has died and sloughed off and created a passageway, a hole between those two sides. Other kinds of similar effects can occur.

Q: Okay, now, and I guess, lastly, what is sinusitis?

A: Sinusitis is inflammation, the meaning of the "itis," of the sinuses, in this case, the nasal sinuses.

Furthermore, this witness stated on cross-examination:

Q: Okay, now a lot of people have sinus problems, correct?

A: True.

Q: And sinus problems can be caused by allergies?

A: Yes.

Q: They can be caused by dry air?

A: Yes.

Q: And they can be caused by many things other than prolonged drug use?

A: Oh, of course, absolutely.

Q: And, basically, your testimony was that when someone is a chronic cocaine user, they can get tissue damage?

A: Yes.

Q: Can someone get tissue damage to the extent that the septum would be degenerated by a one-time use?

A: A one-time use—no—would be extraordinarily unlikely, yes.

5. Later on, the military judge again ruled in the prosecutor's favor on the adequacy of the Government's foundation for admission of this medical evidence. Then defense counsel restated her objections to this evidence, as follows:

DC: No [I do not have anything further], but I would like to further reiterate what my objections were so they are clear for the record.

MJ: Go ahead.

DC: Sergeant Walker is charged with a one-time cocaine use. Dr. Sweet has clearly said a one-time cocaine use would not cause these sorts of problems. He's not a medical doctor; he has not examined Sergeant Walker; he has not reviewed Sergeant Walker's medical records. *He has no basis for his conclusion that, yes, this is indicative of chronic cocaine use. It ends up being more prejudicial than probative, because Sergeant Walker is charged with a one-time use. The Government's trying to bring in some sort of a presumption of chronic use, which would be uncharged misconduct.* It's clearly more prejudicial than probative, in that anyone in this country can have a sinus problem, and it has nothing to do with cocaine whatsoever. And I just reiterate everything from yesterday.

(Emphasis added.) She later added:

DC: Yes, sir; I would like to have you look at the document that the Government wishes to have introduced. *You'll note that the time period is completely irrelevant.* They have information in here of sinus problems going back to 1989. The charged time period is July 7th through the 12th of 1991. *None of these medical records have anything to do with that time period.* They're years and months before or months afterwards. Furthermore, the doctor has testified that smoking and nicotine can't affect, because nicotine is a vasoconstrictor. You'll notice if you read the medical records, it says things like, "This member should stop smoking." I mean, it's—I don't know how much more I can say that it's unduly prejudicial, considering all of the facts and circumstances of this case—the one-time cocaine use, the fact that the Government has documented the problem going back several years, the fact that many people have sinus problems that have absolutely nothing to do with cocaine use. . . .

(Emphasis added.)

6. Trial counsel had opposed this argument. He stated:

TC: Yes, we direct your attention again, your honor, to *United States v. Ray;* this cite was given earlier and yesterday, and that the evidence that we have proffered is relevant and has been found to be so by the Court of Military Appeals in the 1988 decision. *And it's not the Government's position that we were trying to get a presumption that he's a chronic user. The evidence is introduced on the issues of knowing and wrongful, wrongfulness. It's the Government's burden to prove those elements,* and we believe that this evidence is relevant and does not outweigh—and the probative value outweighs any prejudicial effect.

MJ: Can you tell me for sure if that case that you cited involved charges of using cocaine more than one time?

TC: Off the top of my head, I don't know, your honor; I'd have to read the case.

MJ: I don't think I got that from the case. It just said wrongful use of cocaine. It could have been one time or it could have been chronic use. And how would this *information be relevant as to the element of knowing?*

TC: *Because it would show that the—if the accused had used it on a number of occasions that day or had used a large amount that day, or within the charged period between 7 and 12 July, that it would have been knowing,* that the prob-

lem that he had, it just appears as though the more cocaine you use, that's when you start having a sinus problem. I believe that was the testimony of the expert, that it depends on the amount that you actually use at one given time, or continued use over a continuum of time.

*It's the Government's position that if you're using a large amount, that it would be knowing, that it wouldn't be accidental, and it wouldn't be unknowing ingestion.* And because we have the burden of proving that it's knowing as well wrongful, the Government feels it's relevant and should be admitted.

(Emphasis added.)

7. The military judge agreed with the Government. The medical records and testimony of Doctor Sweet were later admitted at this court-martial. No limiting instructions were requested by defense counsel or given by the judge concerning the proper use of this evidence by the members.

---

8. Our starting point in this case is the granted issue. It expressly complains about admission of portions of appellant's medical records evidencing sinusitis to show that he used cocaine on various occasions between January 1989 and October 1991. However, it also implicitly raises a defense objection to testimony from a prosecution witness, Doctor Sweet, that sinusitis is a symptom of frequent or heavy use of cocaine by snorting it through one's nose. In sum, the granted issue asserts that it was unfair for the prosecution to use this medical and scientific evidence to picture him as "a chronic cocaine user," Final Brief at 3, and, on this basis,

convict him of the charged offense (a single specification of cocaine use on or about July 7–12, 1991).

9. Turning first to the broader uncharged-misconduct question, we note that the prosecution is not allowed to show that a military accused ingested a drug in the past and, therefore, he probably did it on the charged occasion. Mil.R.Evid. 404(b). However, evidence of prior use of a drug is not barred for all purposes at a court-martial. On the contrary, Mil.R.Evid. 404(b) itself states:

> (b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. *It may, however, be admissible for other purposes, such as proof of* motive, opportunity, intent, preparation, plan, *knowledge,* identity, *or absence of mistake or accident.*

(Emphasis added.) Accordingly, an initial question in this case is for what purpose was the challenged evidence offered by the prosecution at this court-martial. *See also* Mil.R.Evid. 105.[2]

10. The record of trial shows that appellant was charged with a single specification of using cocaine between July 7 and 12, 1991. We further note that the prosecution predicated its case on evidence that appellant's urine was seized on July 12, 1991, and it tested positive for cocaine. Moreover, it was implied from appellant's pretrial statement (admitted as prosecution exhibit), the defense's opening statement,[3] and its closing

2. This Rule states:

**Rule 105. Limited admissibility**
When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the military judge, upon request, shall restrict the evidence to its proper scope and instruct the members accordingly.

3. DC: Yes, I do [wish to make an opening statement]. Gentlemen: You're going to find that this is not the fast-paced, exciting trial that you see on TV, LA Law; in fact, it might be kind of boring. Government's going to present their urinalysis information; their expert's going to testify. *The defense asks that you keep the open mind that you said you would during voir dire and that you listen to what the Government can't tell you, because they can't tell you that Sergeant Walker knowingly used cocaine.* And as the military judge instructed you, that's one of the elements that they must prove beyond a reasonable doubt. So listen to the evidence, and listen to what is not there, and at the close of the evidence, you're going to find that Sergeant Walker is innocent, as he sits before you now.
(Emphasis added.)

argument[4] that appellant's defense in this case was innocent or unknowing ingestion. Finally, we note that trial counsel initially stated that his intention was to use this evidence to rebut any suggestion by the defense that appellant's use of cocaine on the charged date was inadvertent or unknowing.[5] Admission of evidence of prior acts of similar misconduct to rebut a defense of mistake or lack of knowledge is clearly allowed by Mil. R.Evid. 404(b). *United States v. Spata*, 34 MJ 284–86 (CMA 1992) (rebut defense of innocent ingestion); *see generally United States v. Holmes*, 39 MJ at 180 (knowledge); *United States v. Dorsey*, 38 MJ 244, 247 (CMA 1993) (intent); *United States v. Brooks*, 22 MJ 441 (CMA 1986); *United States v. Brannan*, 18 MJ 181 (CMA 1984). *See United States v. Wiley*, 29 F.3d 345, 350–51 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 522, 130 L.Ed.2d 427 (1994); *United States v. Johnson*, 28 F.3d 1487 (8th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 768, 130 L.Ed.2d 664 (1995); *United States v. Nicholson*, 17 F.3d 1294, 1298 (10th Cir. 1994).

11. Nevertheless, appellant more particularly attacks admissibility of the challenged medical record evidence to show that he repeatedly used cocaine in the past. He argues that the medical records evidenced in his case were not *relevant* to show that he used cocaine on prior occasions. *See* Mil. R.Evid. 401 and 402. He does not expressly reject the decision of this Court in *United States v. Ray*, 26 MJ 468. There, we held that evidence of a medical condition of sinusitis coupled with expert testimony explaining that condition in terms of repeated drug use was *relevant* (but not necessarily admissible)

---

4. Defense counsel responded in her closing argument as follows:

*Now, the Government presented evidence of Sergeant Walker's medical condition, and they would like you to believe that, "There it is, consistent with cocaine use, therefore, he must have known."* Well, look at the time period. Look at when this sinus condition existed. They give you medical evidence that he had sinusitis in 1989. A relevant time period? He's charged with a one-time cocaine use in 1991. So they would like you to believe that, gee whiz, he's such a chronic user, he's been using cocaine since 1989? Well, where is a buck sergeant going to find the money to do that in the first place? And how on earth can he have the outstanding duty performance that he has had over his entire career if he's a chronic cocaine user? It's garbage, absolute garbage.

Sinus problems, and God help anyone who has a sinus problem, can be caused by allergies. It can be caused by dry air; it can be caused by things like root canals which perforate the sinuses, and they didn't even take the time to go back and review his medical and dental records to try to find the cause. *They just pick out a few nice little things to give you and say, "There it is, there's the evidence that should convince you that he knew he used."* Well, some doctor somewhere did look at his problem and prescribe drugs, which indicates that there was some sort of a bacterial or viral infection that he needs a drug to combat. They're not going to just give out these drugs because someone had a sinus condition; they at least look for the problem and what caused it. *But they would like you to believe that that's consistent with knowing use, which it's not.*

5. Later, before the members, trial counsel made a somewhat less precise argument on findings concerning appellant's medical records showing sinusitis. He stated:

The Government also produced some evidence regarding the accused's medical status. You have before you, I believe it's Prosecution Exhibit 7, an excerpt from his medical records, that indicates that the accused has a chronic sinus problem. *Now, it's not the Government's position that everybody who has a sinus problem is a cocaine user.* Dr. Sweet specifically said that's not what he was saying. *What he was saying, however, is that that condition, sinusitis, is one of the results of a person who uses—knowingly uses—cocaine.* Look specifically at the evidence that's before you, the medical records. Now, defense counsel asked Dr. Sweet on cross-examination, "You're not a medical doctor, are you?" and of course, Dr. Sweet's not a medical doctor, but it's the Government's position that a Ph.D. in the field of Pharmacology, which is the study of drugs and the effect it has on the body, is a far more credible witness here to testify to the, to sinusitis or any effect that the body would exhibit based on the use of drugs.

The defense asked on cross-examination whether the expert witness was aware of any other medical problems that the accused had had that would account for the sinus problem. Well, you have no evidence before you that indicates that the accused had a root canal or anything else, but you have before you the fact that the accused had sinusitis around the time that he tested positive for cocaine.
(Emphasis added.)

*(Emphasis added.)*

to show prior drug use. *Id.* at 471–72. *See State v. Jovenal,* 117 Ariz. 441, 442, 573 P.2d 515, 516 (App.1977); *State v. Holmes,* 22 Or.App. 23, 537 P.2d 566, 569 (1975) [6] (evidence of needle marks relevant to show drug possession). Instead, appellant asserts that expert testimony from a medical doctor, who actually examined appellant and these records, was also required to establish that his medical records showed a sinus condition caused by prior cocaine use.

■■■ 12. Mil.R.Evid. 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Our holding in *United States v. Ray, supra,* was based in part on the well-recognized principle of experience that corporal effects of the human body are relevant to identify a substance interacting with the human body. *See* 2 Wigmore, *Evidence* § 457 at 567; *see also* § 242 at 42 and § 446 at 537 (Chadbourn rev.1979).[7] Doctor Sweet here particularly testified that sinusitis (inflammation of nasal mucous membranes) could be caused by repeated or heavy drug use through snorting, although he admitted that it could also be caused by other problems such as allergies or dry air. Our decision in *United States v. Ray, supra,* requires only that the expert testimony establish sinusitis as a symptom of regular drug use. *See United States v. Houser,* 36 MJ 392, 399 (CMA), *cert. denied,* —— U.S. ——, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993). The expert's failure to actually examine appellant or his medical records was a circumstance to be considered by the members in deciding whether to draw an inference of prior use. *See generally United States v. Ryder,* 39 MJ 454, 457 (CMA 1994) (no error in admitting testimony

of expert on effects of LSD based on testimony of witnesses unexamined by expert), *rev'd on other grounds,* 515 U.S. ——, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995).

13. Appellant additionally argues that the above medical-record evidence, even if relevant to show prior drug use for a permitted purpose under Mil.R.Evid. 404(b), was unduly prejudicial and thus barred by Mil.R.Evid. 403. That rule states:

**Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

14. Appellant contends that, at best, the challenged evidence had little probative value to show prior heavy drug use because sinusitis could be caused by so many other common problems such as allergies. On the other hand, he argues that its potential for confusion was great because the Government's own expert witness conceded that this medical condition could not be caused by one-time drug use as charged in this case. Finally, he implies that its potential for undue prejudice was amplified because, in the absence of a limiting instruction, the members might convict him of the charged offense simply on the basis of his bad character as a prior drug abuser. *See also* Mil.R.Evid. 404(b). We agree. *See also United States v. Betts,* 16 F.3d at 759 ("poorly disguised propensity argument" prohibited by Fed.R.Evid. 404(b)).

---

6. We did not hold in *United States v. Ray,* 26 MJ 468, 471–72 (CMA 1988), that evidence of sinusitis, coupled with appropriate expert testimony, was *per se admissible* at all courts-martial for cocaine use. *See* Mil.R.Evid. 403 and 404(b), Manual for Courts–Martial, United States, 1984. In fact, *Ray* was a judge-alone trial where the military judge at least generally recognized the uncharged-misconduct rule, and the testifying expert frankly acknowledged the possibility of other causes of this condition. 26 MJ at 472.

7. The doctrine of chances and the experience of conduct tell us that accident and inadvertence are rare and casual; so that the recurrence of a similar act tends to persuade us that it is not to be explained as inadvertent or accidental....

2 Wigmore, *Evidence* § 242 at 45 (Chadbourn rev.1979). *But see United States v. Betts,* 16 F.3d 748, 758–59 (7th Cir.1994).

**15.** In resolving this Mil.R.Evid. 403 question, we first note that our decision in *United States v. Ray*, 26 MJ at 471, involved a trial by judge alone, who, we presumed, would not be confused by the limited use allowed of this evidence or would not use it unfairly. Appellant's trial, however, was by members; accordingly, the same presumption is not applicable. *E.g., United States v. Deninno*, 29 F.3d 572, 577 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995); *United States v. Johnson*, 28 F.3d at 1499. Second, the challenged evidence of sinusitis had limited value to show prior heavy drug use which was further diminished by the fact that Doctor Sweet did not personally examine appellant. *See generally United States v. Holmes*, 39 MJ at 180–81.

**16.** On the other hand, the sinusitis evidence, coupled with Doctor Sweet's testimony on chronic cocaine abuse, obviously had great potential for prejudicing appellant in his trial for use of cocaine. *See also United States v. Huels*, 31 F.3d 476, 479 (7th Cir. 1994). Moreover, the military judge failed to instruct the members that the particular use of this evidence was limited to rebutting the defense of innocent ingestion. *See United States v. Abel*, 469 U.S. 45, 52–53, 105 S.Ct. 465, 469–70, 83 L.Ed.2d 450 (1984); *see also United States v. Betts, supra.* Finally, the military judge did not give a cautionary instruction to members that they could not use the challenged evidence to show appellant did the charged act. *See also United States v. Cousins*, 35 MJ 70, 74 (CMA 1992). In these circumstances, we conclude that the judge abused his discretion in concluding that admission of this minimally probative evidence was permitted by Mil.R.Evid. 403. *See Government of the Virgin Islands v. Archibald*, 987 F.2d 180, 186–87 (3d Cir.

1993); *United States v. Doe*, 903 F.2d 16, 21–23 (D.C.Cir.1990).

**17.** Despite this conclusion, we are nonetheless convinced that admission of the evidence of sinusitis and Doctor Sweet's testimony suggesting appellant was a chronic drug abuser ultimately proved to be harmless error. *See United States v. Brooks*, 26 MJ at 29; *United States v. Betts*, 16 F.3d at 760–61. First, we note that the prosecution presented an iron-clad case of guilt based on urinalysis evidence. *See United States v. Perry*, 37 MJ 363, 365 (CMA 1993). Second, appellant's attempt to raise the defense of innocent ingestion based on consumption of "crumb cake" during a drinking party, a later feeling that his lips were "numb and tingly," and the subsequent discovery that a drug dealer attended the party was patently feeble. *See United States v. Brooks, supra, cf. United States v. Cousins, supra.* Third, we note that the prosecution's own witness conceded that sinusitis could be caused by a myriad of things besides chronic use of cocaine. Finally, defense counsel substantially diminished the impact of this prosecution evidence through cross-examination of Dr. Sweet which skillfully exploited the obvious weakness of this evidence.[8] Given this state of the record and the rather usual occurrence of sinusitis in the general population, we are confident that the members—using their common sense and everyday experiences—placed this evidence in a proper perspective and did not afford it substantial weight. *See United States v. Fortes*, 619 F.2d 108, 121–22 (1st Cir.1980).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.

---

**8.** Furthermore, defense counsel hit a home run on this point during her closing argument. (*See* n. 4 (2d para.), *supra*).