**UNITED STATES**

v.

**Master Sergeant Verdell GRAHAM, Jr., FR254–02–5332 United States Air Force.**

**ACM 32283.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 16 Feb. 1996.

Decided 31 March 1997.

Appellate Counsel for Appellant: Colonel David W. Madsen, Lieutenant Colonel Kim L. Sheffield, and Major Ray T. Blank, Jr.

Appellate Counsel for the United States: Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin, and Captain Deborah M. Carr.

Before PEARSON, MORGAN, C. H., II, and MORGAN, J.H., Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, C. H., II, Judge:

In 1992 appellant was tried and acquitted of unlawful use of marijuana based upon a positive urinalysis. At that trial he presented an unknowing ingestion defense, putting on a civilian who claimed to have laced a birthday cake with marijuana. Less than four years later, appellant again tested positive for marijuana and was again tried. This time he was convicted by a general court-martial consisting of members, who sentenced him to a bad-conduct discharge, confinement for six months, and reduction to E–4. He appeals, asserting five errors, only one of which merits extended discussion, namely, whether the military judge abused his discretion in permitting the prosecutor to ask appellant, on cross-examination, whether he had ever tested positive for tetrahydrocannabinol (THC) before on urinalysis. Finding that the judge did not abuse his discretion, and that appellant's remaining four assignments of error are without merit, we affirm.

### Previous Positive Urinalysis

Some factual context is in order. Appellant was a senior NCO with an extraordinarily good military record, nearly all "firewall" performance reports, and with over 20 years of service at the time of trial. In 1991, while stationed in England, he was administered a random urinalysis which tested positive for the presence of THC, the psychoactive ingredient of marijuana, and was duly court-martialed. According to the sketchy narrative of the prosecutor in this trial and attachments to his motion, appellant apparently admitted to an investigator the possibility of having smoked marijuana, but at trial produced a British national who remembered lacing a birthday cake with marijuana, unknown to appellant. His testimony was obviously sufficient to at least raise a reasonable doubt in the minds of some members as to whether appellant's positive urinalysis was as a result of knowing use of marijuana.

In August of 1995 appellant's squadron commander determined to do a 100 percent unit drug urinalysis sweep. Appellant was selected, along with seven other master sergeants and two female technical sergeants, to monitor the process. He, along with the other nine monitors, was called on September 1, 1995, by the first sergeant, ostensibly for a quality of life survey, but in reality to advise the monitors of the forthcoming (September 5) unit sweep, and to test the monitors themselves. The taking of appellant's urine sample was personally observed by the first sergeant, a chief master sergeant, and was duly initialed, labeled, taped, packed, and shipped to the USAF Armstrong Laboratory at Brooks AFB, Texas, for testing. It was returned with notification that appellant's urine had tested positive for THC, 27 nanograms per milliliter, well above the DoD cut-off of 15 nanograms per milliliter.

At this trial, appellant initially gave notice pursuant to R.C.M. 701(b)(2) of an intent to present an innocent ingestion defense. Later, possibly recognizing the portent of such a strategy in view of its previous employment, appellant specifically eschewed that defense at trial, putting on instead a "good soldier" [sic] defense. We use the word "instead" advisedly, because the unmistakable thrust of appellant's trial theory was that he would not and did not *knowingly* take marijuana. The government put on a meticulously thorough case through the testimony of Dr. Frederick, who explained the procedure, science, and chain of custody of the Armstrong Laboratory. Three independent tests, using two different scientific methodologies, were all positive, all above DoD

thresholds. Despite a very capable cross-examination by trial defense counsel, appellant was unable to dent the government's proof that appellant's urine sample was, indeed, positive for THC.

Defense counsel were understandably quite worried about the 1991 positive urinalysis, and sought at the outset to bar the government's use of it by a motion in limine. The trial judge deferred ruling on the issue, allowing that, while it was not admissible in the government's case in chief, it might become so as the trial developed. Following the conclusion of the government's case, appellant took the stand in his own defense. He denied knowing how he could have tested positive, adding "there's no way I would knowingly use marijuana." He described himself as "shocked, upset, flabbergasted," upon learning that his sample had tested positive. He could not recall what he had eaten and drunk before his urinalysis, or having done anything different the day of the urinalysis.

This was enough, in the view of the military judge, to allow the government to cross-examine appellant on the previous positive urinalysis, for the limited purposes of helping the members decide "what the likelihood would be that the accused would test positive twice for unknowingly ingesting marijuana and for what the likelihood would be that the accused was flabbergasted when he was informed that he had tested positive this time." The military judge emphatically and repeatedly told the prosecutor that he could not ask about the previous court-martial. Following lengthy discussion and argument, the trial counsel was permitted to ask one question only, and that was whether appellant had ever tested positive before. No follow-up was permitted. Despite the military judge's repeated admonitions to the prosecutor not to mention the previous court-martial, when asked if, on one occasion in the past, he had had a positive urinalysis for marijuana, appellant volunteered, "Yes, but I was found not guilty." The prosecution was not allowed to explore the question further.

■ A judge's decision to admit evidence, even evidence of uncharged misconduct, is reviewed on the abuse of discretion standard. *United States v. Mukes,* 18 M.J. 358, 359 (C.M.A.1984). Although a close question, we do not believe the military judge abused his discretion in allowing evidence of appellant's previous positive urinalysis.

■ A threshold question is whether evidence of misconduct used in a previous court-martial, which has resulted in acquittal, may be used in a subsequent court-martial for a different offense. The answer is that it can, if it is otherwise admissible, provided the previous verdict is not preclusive of the fact sought to be adduced by the evidence. *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *United States v. Hicks,* 24 M.J. 3, 8 (C.M.A.1987). In this case appellant's 1992 acquittal did not mean that the court-martial had disbelieved that his urine had tested positive for THC. Ironically, what it meant in all likelihood was that at least some of the members entertained a reasonable doubt as to whether appellant had *knowingly* ingested that marijuana.

The military judge's ruling in this respect is not without difficulty. If the purpose of the ruling were to permit the prosecution to rebut the unknowing ingestion defense, the limitation on the prosecutor acted at cross-purposes. Without knowledge that appellant had been tried and acquitted on the basis of an unknowing ingestion defense, the members were left to mull over a myriad of possibilities which have nothing to do with the reason the military judge gave for allowing evidence of the previous positive urinalysis. Several examples come to mind: it could have been a command-directed urinalysis, inadmissible for court-martial purposes; there could have been problems with the chain-of-custody; the urinalysis could have been suppressed for any number of reasons; or it could have been handled administratively or through nonjudicial punishment. In any of those scenarios, admission of the previous urinalysis would look like, and most likely be, pure propensity evidence prohibited by Military Rule of Evidence (MIL. R. EVID.) 404(b). The difficulty with the military judge's ruling was that its stated premise relied on a fact known to the judge (that there had been a court-martial, and that the

previous acquittal was based on an unknowing ingestion defense), but not to the members. Because we hold herein that the facts, that there was a previous court-martial, and it was defended on the basis of unknowing ingestion, were admissible to the members, the military judge's logical miscue redounded, if anything, in appellant's favor. In all events, appellant's obviously calculated volunteering of the information on the acquittal mooted any question of the admissibility of the earlier court-martial.

■ It is axiomatic that uncharged misconduct cannot be used to demonstrate so-called "propensity" evidence. MIL. R. EVID. 404(b). To be admissible, it must be relevant under one or more of a number of enumerated exceptions. In this case, the evidence was admissible under MIL. R. EVID. 404(b) because it tended to prove "knowledge" and the "absence of mistake or accident." *United States v. Walker*, 42 M.J. 67, 71 (1995). Appellant offered no explanation for his positive urinalysis, no theory as to how it might have been mistaken. He elected instead to hammer away at his sterling military career and character, and his assertion that he would never do anything to jeopardize it. Left unstated, but clearly dangled in front of the members, was the only logical alternative— that marijuana had somehow gotten into his system without his knowledge. A first visit of the dope fairy to an unsuspecting innocent is at least plausible, a second visit to the same victim approaches statistical impossibility. Nobody is that unlucky.

■ Even if relevant, however, a military judge is required to balance the probativeness of the uncharged misconduct against its prejudice. *United States v. Cousins*, 35 M.J. 70 (C.M.A.1992). The military judge did not abuse his discretion deciding that the danger of unfair prejudice to appellant of the previous urinalysis did not substantially outweigh its probative value. In the first place, the evidence powerfully rebutted appellant's implied lack of knowledge. As such, it was quite relevant. Standing back from the fray, and viewing in context the whole of appellant's testimony and approach in this trial, we are left with the queasy feeling that there would have been something inherently misleading, unfair, and *wrong* had the court-members been kept ignorant of the fact that appellant had gone to the unknowing ingestion well once before. There is no denying that it was powerfully damning to appellant's theory of the case, but not unfairly so. The evidence was not so much indicative of propensity as it was destructive of appellant's effort to plant, and thence harvest, the innocent ingestion seed a second time. On that basis, it was not precluded by Military Rule of Evidence 403. Compare *Walker*, 42 M.J. at 73 (evidence of sinusitis not sufficiently probative of cocaine usage where accusation was only one-time usage to balance against danger it would be used to establish propensity and bad character.)

### Remaining Assignments of Error

■ We dispense *seriatim* with appellant's other four assignments of error. The military judge did not abuse his discretion in refusing to order a defense consultant to facilitate cross-examination of the government's expert. We agree with the convening authority and the military judge that appellant made out an unpersuasive case to show that such a consultant was necessary. R.C.M. 703(d); *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *United States v. Garries*, 22 M.J. 288 (C.M.A. 1986); *cf. United States v. Mosley*, 42 M.J. 300 (1995).

We are personally persuaded, beyond a reasonable doubt, as to appellant's guilt of the specification and the charge. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). Appellant's argument here is no more than a rehash of that which he unsuccessfully pitched to the members, and no more persuasive to us.

■ The staff judge advocate did not introduce new matters into the addendum by disagreeing with appellant's assertion that he had been unfairly treated compared with other senior noncommissioned officers convicted of a similar offense. The staff judge advocate, in response to appellant's non-specific allegations of other senior noncommissioned officer cases, wrote, "The decision whether to grant or deny clemency in this Accused's

case is left to the sound discretion and judgment of the convening authority, and should not be based upon comparison with other findings and sentences imposed in other cases unrelated to the particular facts and circumstances of *this* case." [Emphasis in original.] This no more than correctly stated the law with respect to sentence comparability. Disagreement with counsel's argument, without more, is not new matter. *See* R.C.M. 1106(f)(7) (Discussion); *United States v. Leal*, 44 M.J. 235, 236 (1996).

■ Finally, although we are moved by appellant's predicament and his potential loss of retired benefits, we cannot say that under the circumstances his sentence is inappropriately severe. The so-called mendacity instruction, which the military judge gave in this case, informs the members that while they cannot punish an accused if they think he lied on the stand, they may consider his testimony on the stand when they look at his rehabilitative potential. Before the members, and to date, appellant has refused to acknowledge wrongdoing, nor even personal responsibility for his situation. Members properly might have considered that his unspoken rejection of their verdict augured poorly for his rehabilitation potential, and so do we.

### Conclusion

Finding no error prejudicing appellant's substantial rights, and that the findings and sentence are correct in law and in fact, the same are hereby

AFFIRMED.

Senior Judge PEARSON and Judge J.H. MORGAN concur.