UNITED STATES

v.

**Staff Sergeant Sherrie L. MATTHEWS,
United States Air Force.**

ACM S29326.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 27 Sept. 1996.

Decided 12 March 1999.

Appellate Counsel for Appellant: Major Robin S. Wink (argued), Colonel Douglas H. Kohrt, and Lieutenant Colonel Kim L. Sheffield.

Appellate Counsel for the United States: Captain Steven D. Dubriske (argued), Colonel Brenda J. Hollis, Colonel Michael J. Breslin, and Major J. Robert Cantrall.

Before ROTHENBURG, Chief Judge, SNYDER, Senior Judge, SENANDER and SPISAK, Appellate Military Judges.

## OPINION OF THE COURT

ROTHENBURG, Chief Judge:

Despite her plea of not guilty, a special court-martial composed of officer members found appellant guilty of one specification of wrongfully using marijuana in violation of the Uniform Code of Military Justice (UCMJ) Article 112a, 10 U.S.C. § 912a. She was sentenced to a bad-conduct discharge and a reduction to E–1. Appellant's sole assignment of error is that the military judge erred when he determined that the defense opened the door to admission of the results of a commander-directed urinalysis. Finding no error, we affirm.

## BACKGROUND

After receiving notification that one of the people in his office had been randomly selected to provide a urine sample, Air Force Office of Special Investigations (AFOSI) Special Agent L presented the notification document to appellant on the afternoon of Wednesday, 24 April 1996. Special Agent L advised appellant that she would be required to provide a urine sample the following morning. An hour later, a pale appellant told Special Agent L that she was ill, and she went home early. Appellant had called in sick on Monday and Tuesday of that week, and again called in sick on Thursday, the day she was originally scheduled to provide a urine sample. Appellant did not provide the urine sample until the following Monday, 29 April 1996.

The urine sample appellant provided tested positive for marijuana at a concentration level of 57 nanograms per milliliter (ng/mL). Appellant was then ordered to provide a commander-directed urine sample. That sample, collected 23 days after the original urine sample, tested positive for marijuana at a concentration of 45 ng/mL. During the pretrial hearing, the prosecution represented that it did not intend to introduce the commander-directed positive urinalysis in its case-in-chief unless the defense case opened the door to its admission.

At trial, the primary evidence against appellant was the first positive urinalysis. The defense's case began with the introduction of seven affidavits from appellant's commander, former commander and AFOSI agents who were members of the various AFOSI offices where she had worked over the course of her career. Each of the affidavits extolled either appellant's professionalism or her outstanding duty performance; some recited specific instances in support of those opinions.

The first defense witness, Special Agent F testified that he had attended a luncheon that appellant attended nine days before the Monday her original urine sample was taken. He recounted how he felt sick after the luncheon and that, on the following Monday, he was placed on quarters for 24 hours after his doctor was unable to diagnose the malady. The agent testified that he did not feel completely well until that Wednesday, when he attended a luncheon at a local pizza restaurant also attended by appellant. The agent did not get sick from the pizza luncheon, nor did anyone else to his knowledge.

Appellant was the next defense witness. She began her testimony with a brief resume of her military career, highlighting her duties as Non–Commissioned Officer In Charge (NCOIC) of information management for the local AFOSI detachment and relating that she had been with AFOSI for ten years at different locations. She then testified about the events that occurred during the taking of her urine sample. When asked by her trial defense counsel if she was "overall at the time comfortable with the (collection) process," she replied, "yes." At this point, her testimony on direct examination proceeded as follows:

Q. And you've seen the documents from the laboratory and you are aware, I know,

the government has charged you with wrongful use of marihuana between on or about 1 April 1996 and 29 April 1996, you are aware of that?

A. Yes, sir.

Q. Did you do that?

A. No, sir.

Q. Well, let me ask you a question then; do you have any idea how the results came back positive on you?

A. No sir. I do not.

Q. Is there anything at all?

A. No, sir.

Q. What—has this pending court-martial affected you in any way?

A. Yes, sir. They took away my security clearance and my job.

Q. How do you feel about the fact that this test has identified you as having used marijuana during the time frame; how does that make you feel?

A. Mad.

Q. Has it affected the way you relate with people in your unit?

A. Yes, sir.

Q. Has it affected the way you relate with your family?

A. Yes, more stressed.

This concluded appellant's direct examination, and trial counsel immediately requested an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session at which he argued that appellant's testimony opened the door to admission of the commander-directed urinalysis under Mil.R.Evid. 404(b) as proper rebuttal evidence to show appellant's knowledge of and opportunity to use marijuana. Trial defense counsel responded that all his questions of appellant on direct examination were limited to the charged time frame, and she did not go beyond denying the offense.

The military judge recalled the government expert, Dr. P, during the session to aid in his ruling, specifically, whether the results of the subsequent urinalysis possibly reflected marijuana which remained in appellant's system from the prior use, which would have rendered trial counsel's request moot. Dr. P testified that, given the length of time between collection of the urine samples and the THC level in the second urine sample, the THC level in the second sample could not be attributed to the first ingestion represented by the prior sample. In other words, the test results of each sample represented a distinct and separate use of marijuana.

The military judge ruled that:

> I am satisfied, counsel, that, based upon Sergeant Matthews' testimony, that she, in essence, did not on any occasion between 1 April and 29 April, use marijuana; and in light of Doctor P's testimony with respect to the specimen provided on 22 May, that that directly impeaches her testimony that she did not use any type of marijuana between 1 and 29 April. Further, I think there is a basis under [Mil.R.Evid.] 404(b) for the admissibility of such evidence as it relates to knowledge.

The military judge specifically ruled that he was not admitting the evidence as strict impeachment evidence under Mil.R. 608(b), but as rebuttal under Mil.R.Evid. 404(b).

## DISCUSSION

■■■ We review the military judge's decision, that an accused's direct testimony opened the door to cross-examination using the results of a command-directed urinalysis, for abuse of discretion. *United States v. Graham*, 46 M.J. 583 (A.F.Ct.Crim.App. 1997), *rev'd on other grounds*, 50 M.J. 56 (1999). It is generally accepted that the military judge has wide discretion in determining admissibility of evidence, and absent a clear abuse of discretion, the judge's determination to admit evidence will not be disturbed on appeal. *See United States v. Johnson*, 46 M.J. 8 (1997); *United States v. Redmond*, 21 M.J. 319, 326 (C.M.A.1986). As noted by Chief Judge Cox of our superior court:

> The 'abuse of discretion' standard is a strict one and ... (t)o reverse for an 'abuse of discretion' involves far more than a difference in ... opinion ... The challenged action must ... be found to be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous' in order to be invalidated on appeal.

*United States v. Travers,* 25 M.J. 61, 62 (C.M.A.1987) (quoting *United States v. Glenn,* 473 F.2d 191, 192 (D.C.Cir.1972)). In applying this standard of review we are reminded that "close calls are what exercising discretion is all about." *United States v. Pruitt,* 43 M.J. 864, 869 (A.F.Ct.Crim.App. 1996), *aff'd,* 46 M.J. 148 (1997).

■ In both their brief and at oral argument,* appellate defense counsel assert that appellant's testimony did no more than deny all the elements of the offense with which she was charged, which she can rightfully do without fear of opening the door to "illegally seized" evidence. Therefore, appellant avers that, for the second, commander-directed urinalysis to be admissible, it must meet five criteria: (1) appellant must have testified; (2) she must have made a sweeping claim that she never used marijuana; (3) the subsequent urinalysis would impeach her testimony by contradiction; (4) the second urinalysis reasonably supports a finding that she committed drug use; and (5) the admission passed the Mil.R.Evid. 403 test.

Of these five, appellant firmly leans on (2) and (3). She insists that her testimony was not a sweeping denial; *ergo,* the results of the commander-directed urinalysis only impeached rather than contradicted her date-specific denial. For this analytical model appellant relies on Mil.R.Evid. 311(a), which excludes evidence obtained by an illegal search, unless it comes within one of the exceptions of Mil.R.Evid. 311(b) and *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); *United States v. Trimper,* 28 M.J. 460, 466 (C.M.A.1989).

The linchpin of appellant's analytical model is her assertion that a commander-directed urinalysis is *per se* violative of the Fourth Amendment. As such, appellant avers, it falls within the strictures of Mil.R.Evid. 311(a). For purposes of his ruling, the military judge went no further than to view the commander-directed test as a sample taken without probable cause and, for that reason, he exercised caution in deciding whether appellant had "opened the door" by her testimony on direct examination. Nonetheless, he determined that the results of the commander-directed urinalysis did contradict appellant's testimony and ruled that it was within the Mil.R.Evid. 311(b)(1) exception.

Mil.R.Evid. 311(b)(1) codifies *Walder* and its progeny. It provides:

> Evidence that was obtained as a result of an unlawful search or seizure may be used to *impeach by contradiction* the in-court testimony of the accused.

(Emphasis added). In *Walder,* the Court allowed the prosecution to introduce into evidence heroin obtained in an illegal search to impeach the defendant's testimony that he had never possessed narcotics. *Walder,* 347 U.S. at 65, 74 S.Ct. 354. This exception was later expanded to allow admission of illegally seized evidence to contradict a defendant's answer to questions on cross-examination, as long as the cross-examination was within the scope of direct examination. *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980). *Trimper,* of course, involved the situation of Captain Trimper making a sweeping denial of having ever used cocaine, which far exceeded the question asked him on cross-examination. As a consequence, the results of a subsequent, commercial laboratory analysis, obtained by him, were ruled admissible. *Trimper,* 28 M.J. at 466.

This Court's acceptance of appellant's analytical model would require us to first address the issue of whether a commander-directed seizure of a urine sample violates the Fourth Amendment. While this question has been discussed on a number of occasions, it usually has been in the form of *dicta* while resolving the case in question on other grounds. *See generally United States v. McCastle,* 43 M.J. 438 (1996), *cert. denied,* 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996); *United States v. Williams,* 35 M.J. 323 (C.M.A.1992); *United States v. Bickel,* 30 M.J. 277 (C.M.A.1990); *United States v. McCastle,* 40 M.J. 763 (1994). Courts, however, traditionally decide legal questions on the narrowest basis possible.

---

* Oral argument was held at the Judge Advocate General School, Maxwell Air Force Base, Alabama, as part of this Court's Project Outreach.

Therefore, this Court concludes that the issue in this case can be resolved on the basis of existing precedent without reaching the constitutional question. Specifically, we hold that appellant did, by her entire testimony and case-in-chief, open the door to the results of the commander-directed test.

One of the problems with appellant's analytical model is that it isolates its focus solely to her answers regarding the date, 1 through 29 April 1996, rather than her testimony. Notwithstanding trial defense counsel's attempt at keeping the door closed, his questions, and appellant's answers, went beyond a mere denial. Had appellant concluded her testimony with the "No, sir," in response to the question "did you do that," her argument that all she did was deny the elements of the offense might be persuasive. But that was not the case.

In addition to testifying that she did not use marijuana between 1 and 29 April 1996, she also testified that she had no idea how the urinalysis results returned positive and she was mad that she was identified as having used marijuana during the time charged. In light of the fact that appellant conceded the urine sample tested was hers and the laboratory test procedures and results appeared to be accurate, appellant's testimony in fact raised the affirmative defense of innocent ingestion. *See generally Graham,* 46 M.J. at 586; *United States v. Ross,* 44 M.J. 534, 535 (A.F.Ct.Crim.App.1996). The prosecution, of course, may either rebut or otherwise discredit a claimed affirmative defense but, in the instant case, this factor does not resolve the issue. While the results of the commander-directed test, standing alone, demonstrates that appellant was less than candid during her testimony, it does not directly contradict her, at least with regard to whether she used marijuana between 1 and 29 April 1996. Consequently, this is where appellant's entire testimony becomes extremely relevant to the issue.

Prior to taking the stand to testify in her own behalf, appellant introduced several affidavits from her colleagues extolling her professionalism and outstanding service. They were properly admitted under Mil.R.Evid. 404(a) as evidence of a pertinent character trait. Solely by submitting these affidavits, appellant placed her military character in issue and opened a door otherwise closed to the prosecution. *See Pruitt,* 43 M.J. at 867 ("[T]he accused holds the key to the character closet."). An accused opens the character door in an effort to convey to the factfinder that he/she has acted in conformity with the pertinent trait in issue. The relevancy of this factor was observed by the Court in *Trimper.*

While *Trimper* generally is read as one of the classic examples of a sweeping response of denial to an appropriately narrow cross-examination, the Court's analysis also offers guidance for an appropriate analytical model for the instant case. Although character evidence was not the precise issue before the Court, then Chief Judge Everett began his analysis with a brief review of the role of pertinent character trait evidence by observing:

> As we interpret Mil.R.Evid. 404(a)(1), an accused who testifies that he has never engaged in conduct like that for which he is being tried is offering evidence that he possesses the "pertinent trait" of abstaining from such conduct. A logical—and permissible—rebuttal by the prosecution is to show that the accused previously has engaged in similar conduct.

*Trimper,* 28 M.J. at 467. If a sweeping denial alone inserts this pertinent trait into the proceeding, thereby rendering otherwise inadmissible evidence admissible, is it unreasonable to conclude that a date-specific denial combined with actual pertinent character trait evidence also opens the door? We believe not.

Good military character has long been recognized to be pertinent to drug charges in the military justice system. *See United States v. Vandelinder,* 20 M.J. 41 (C.M.A. 1985); *see also United States v. Court,* 24 M.J. 11, 14 (C.M.A.1987) (and cases cited therein); *United States v. Weeks,* 20 M.J. 22, 25 (C.M.A.1985). Good character evidence alone may raise a reasonable doubt in the mind of the factfinder. *Vandelinder,* 20 M.J. at 47. In fact, this evidence is submitted for the inference proffered that a person of good military character is unlikely to, in fact would

not, commit a drug offense, because such offenses strike at the heart of military discipline and readiness. *Id.* at 45; *see Pruitt*, 43 M.J. at 867. As stated, *ante*, however, appellant did not rely solely on the affidavits to establish her stellar military character.

During the early part of her direct testimony, before making her date-specific denial, appellant told the court-martial how she cross-trained into AFOSI because she needed more of a challenge than that presented in the maintenance information management career field, and that after an interview her application was accepted, and that she was on her third duty assignment with the AFOSI. Further, appellant echoed the affidavits' extolling of her dedication, as reflected in the long hours she frequently worked to accomplish the unit's mission. When one compares the affidavits with appellant's testimony, one is immediately struck with the fact that they dovetail like a mortise and tenon. Appellant's testimony subtly, but unmistakenly, accentuated the theme of the affidavits. Trial defense counsel clearly crafted his questions with this goal in mind. The miscalculation, however, was what does one get when appellant's denial of knowingly ingesting marijuana is mixed with the good military character defense?

As our superior court has cautioned, the defense must assume responsibility not only for the evidence it introduces, but also for the reasonable inferences that may be drawn from such evidence. *See United States v. Shields*, 20 M.J. 174, 176 (C.M.A.1985); *United States v. Strong*, 17 M.J. 263, 266 (C.M.A.1984). In the instant case, it is not merely the inference that may be drawn from the defense's evidence, but the inference which unmistakenly was asserted.

Through the affidavits and her testimony, appellant essentially testified to the court-martial that, because I am such a professional and outstanding airman I did not, and would not, knowingly use marijuana. *See Trimper*, 28 M.J. at 467. The military judge also was alert to the impact of appellant's testimony regarding her character, as reflected in the following exchange:

DC: Sergeant Matthews did not go beyond that: she denied having committing the offense that occurred in this case; she didn't make any broad sweeping statements about never having used drugs or "I'm not a drug abuser, I would never associate with anyone" of that nature.

MJ: Oh, she came awfully close.

Does justice dictate that appellant be allowed to present this picture to the factfinder while well aware there is evidence which suggests that she is a drug abuser? We hold, resoundingly, no.

The fact that the commander-directed test disclosed an instance of use after the charged time frame merits only a brief pause. To address it, we need only again consider the reason pertinent character trait evidence is relevant; specifically, that the accused possessed the same character trait at the time of the offense as that of the time period with which the character evidence is concerned. Otherwise, the pertinent character trait evidence would have no legal relevancy on the issue of guilt or innocence and would not be admissible. *United States v. Brewer*, 43 M.J. 43, 47 (1995); *see United States v. Pearce*, 27 M.J. 121, 124 (C.M.A.1988). To accept appellant's view of the evidence would require that this Court hold that an accused can state to a court-martial that "my good military character should create a reasonable doubt in your mind that I knowingly used marijuana between 1 and 29 April 1996, but all bets are off after that date." We do not believe that to be the law.

We hold that appellant can be held to the standard of the same military character trait on 22 May 1996 that she claimed she possessed between 1 and 29 April 1996, a mere 23 days earlier. *See Brewer*, 43 M.J. at 47. Consequently, the results of the commander-directed test contradicted appellant's testimony which denied having knowingly used marijuana and her testimony which accentuated her good military character evidence, which was asserted to support her denial. The only remaining issue is whether the evidence qualifies under Mil.R.Evid. 404(b) and, if so, whether it survives the Mil.R.Evid. 403 test. We answer yes to both.

█ Under the circumstances of the instant case, the results of the commander

directed test clearly meet the three-pronged test of admissibility required of evidence submitted under Mil.R.Evid. 404(b), which is:

(1) Does the evidence reasonably support a finding by the court members that appellant committed other crimes, wrongs, or acts;

(2) Does the evidence make a fact of consequence more or less probable; and

(3) Is the probative value of the evidence substantially outweighed by the danger of unfair prejudice?

*United States v. Cousins,* 35 M.J 70, 74 (C.M.A.1992); *United States v. Reynolds,* 29 M.J. 105, 109 (C.M.A.1989). If the evidence fails any of the three tests, it is inadmissible. Mil.R.Evid. 401–403. *Id.*

As for the first test, we are satisfied that the positive commander-directed urinalysis reasonably supports a finding that appellant used marijuana. Dr. P interpreted the test results and the meaning of appellant's urine containing the metabolite for marijuana, which meant she had ingested marijuana. *See United States v. Ford,* 23 M.J. 331 (C.M.A.1987); *United States v. Harper,* 22 M.J. 157 (C.M.A.1986); *cf. United States v. Murphy,* 23 M.J. 310 (C.M.A.1987) (scientific principles of urinalysis must be explained in court by an expert witness to assist members in interpreting results). This more than meets the requirement of *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), and *United States v. Mirandes–Gonzalez,* 26 M.J. 411 (C.M.A. 1988).

For the second test, we find that it is relevant to the credibility of appellant's denial of knowing use and to her assertion of professional and outstanding service. Mil. R.Evid. 401 and 402. The truthfulness of this assertion is contradicted by the presence of the same metabolite three weeks later, her denial and character evidence notwithstanding. The subsequent positive urinalysis close in temporal proximity attains relevance by its tendency to make the existence of a fact— knowing use of marijuana—more or less probable than it would without the evidence. Mil.R.Evid. 401. This is a situation where the denial of an unusual occurrence becomes less believable when the same occurrence happens again within a short time span. *See* Wigmore's "doctrine of chances," 2 J. Wigmore, *Evidence* § 302 at 241 (Chadbourn rev.1979); *see also United States v. Betts,* 16 F.3d 748, 759 (7th Cir.1994) (Evidence of the defendant's subsequent criminal activity might be admissible to prove his prior conduct was not unwitting or accidental, particularly when the later incident occurs within a relatively short time of the first. (citations omitted)).

And, for the third test, we agree that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Mil.R.Evid. 403. We are acutely aware of the picture appellant attempted to paint with her testimony—that of the outstanding airman-victim. Appellant was not required to testify in her own behalf. She could have introduced evidence of her good military character even had she not testified, which would have restricted the prosecution's rebuttal of her character evidence to the same means by which it was introduced. *See* Mil.R.Evid. 405. In view of the fact that this was a urinalysis case, appellant's testimony made her credibility central to resolving the case. If the members believed her and her character evidence, as opposed to the urinalysis lab results, they would have acquitted her. Therefore, the probative value of the results of the commander-directed test results was extremely high.

Weighing all these factors, we find the military judge did not abuse his discretion by admitting the evidence. We note that the military judge properly limited the use of the evidence and provided proper limiting instructions. Subsequent to appellant's testimony, including her cross-examination, the military judge instructed the court members that there were no charges against appellant arising from the second urine sample, and that it was outside the time period charged in this case and constituted "other acts evidence or uncharged acts evidence." The military judge then indicated that he permitted the evidence for a very limited purpose for two reasons:

The limited purpose of this evidence, with respect to a second testing some three weeks after the first urine specimen was

provided, of its tendency, if any, to either prove knowledge on Staff Sergeant Matthews' part with respect to the offense charged—remember two of the elements I told you about knowing and conscious ingestion... or to show an opportunity on her part to use marihuana during the time period charged... and as it may affect your assessment of the credibility of her testimony.... Three very limited purposes that I am admitting this evidence, this 21 May sample. You may not consider this evidence for any other purpose...and you may not conclude from this evidence that Staff Sergeant Matthews' is a bad person, has criminal tendencies, or that she therefore committed the offense charged....

The military judge repeated this instruction during instructions on findings. In light of these instructions, we are convinced the members used the evidence for the purpose for which it was admitted.

 We briefly recount our holding for the benefit of the trial practitioners so that this case is not misapplied. First, whenever an accused denies using an illicit drug but concedes the urine sample is his or hers as well as the accuracy of the laboratory test results, and states or implies no knowledge of how the illicit drug may have been in-gested, this raises the affirmative defense of innocent ingestion. It does not, however, automatically render the results of a commander-directed urinalysis admissible. Second, good military character evidence, whether in the form of affidavits or testimony by witnesses other than the accused, renders the results of a commander-directed test admissible, but only within the confines of Mil. R.Evid. 405 and 608(b). Third, when an accused denies ingesting an illicit drug and also testifies to his/her good military character in support thereof, then the results of a commander-directed urinalysis is admissible in rebuttal under Mil.R.Evid. 404(b) and 403.

We conclude that the findings and sentence are correct in law and fact and that no error prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and sentence are

AFFIRMED.

Senior Judge SNYDER, Judge SENANDER, and Judge SPISAK concur.